HERSCHEL M. BYALL, Administrator of AMY YOUNG, deceased, vs. JAY A. RIGDON.

1. ATTACHMRNT—DISSOLUTION—INTERVENTION BY THIRD PERSON—NATURE AND FORM OF REMEDY.

The questions raised by a petition of interveners praying for rule to show cause why an issue should not be granted to determine the ownership of corporate stock attached as the property of defendant or that an order be made dissolving the attachment can properly be determined only in equity where all the facts can be ascertained and all the parties brought in and their rights

adequately protected, so that the petition for the rule should be dismissed. without decision.

2. ATTACHMENT—DISSOLUTION—INTERVENTION BY THIRD PERSON—NATURE AND FORM OF REMEDY.

The contention that, the interveners having caused the stock to be transferred on their books, they are thereby estopped from denying defendant's ownership as against attachment creditor, being independent of the question of ownership, and it being contended by the petitioners that there was no consideration for the transfer, was also a proper question for the determination of a court of equity.

(*May 7*, 1917)

PENNEWILL, C. J., and BOYCE, J., sitting.
*Robert H. Richards* and *James I. Boyce* for plaintiff.
*Armon D. Chaytor, Jr.*, and *Henry R. Isaacs* for interveners.
Superior Court, New Castle County, March Term, 1917.
FOREIGN ATTACHMENT, No. 13, September Term, 1916.

ACTION by Herschel M. Byall, administrator of Amy Young, deceased, against Jay A. Rigdon. On rule to show cause at the instance of J. W. Sparks & Company, interveners. Rule discharged.

J. Maurice Wynn, as a member of the partnership consisting of himself and John W. Sparks, trading as J. W. Sparks & Company, engaged in business as bankers and brokers, filed a petition as interveners and prayed for a rule to show cause why, in substance, an issue should not be granted to determine the ownership of four hundred shares (represented by certificates hereinafter mentioned) of the nine hundred shares of the capital stock of the Nevada Wonder Mining Company, seized as the property of the defendant in the attachment proceedings; or that an order be made dissolving the attachment as to the said four hundred shares and that a retransfer thereof be directed to be made to the petitioners.

The rule was granted and service was accepted by counsel for plaintiff. No service was made upon defendant, nor had he appeared by giving bail as required by the statute.

For the purpose of the argument on the rule, it was admitted that the facts alleged in the petition are true. In order to avoid multiplicity of actions, it was also conceded that the Superior

Court has authority to grant the relief, if any, to which the petitioners may be entitled.

The facts alleged in the petiton are substantially, as follows:

On the nineteenth day of May, A. D. 1916, Herschel M. Byall, Administrator of the Estate of Amy Young, deceased, filed in this court the affidavit required in cases of foreign attachment and a praecipe for the issuance of the writ. The return endorsed on the writ shows that on the following day the sheriff attached all of the shares of the capital stock of the defendant in "Nevada Wonder Mining Company", a corporation of the state of Delaware, and that the sheriff received from J. Harvey Whiteman, a director of the said company, a certificate showing the number of shares held or owned by the said Jay A. Rigdon in the said Nevada Wonder Mining Company, with the numbers and other marks distinguishing the same. From the said certificate, it appears that the defendant was the holder of nine hundred shares of the capital stock of the said company, the certificates representing said shares being numbered as follows: No. 3788 for five hundred shares, and No. A 7763-64-65-66 for one hundred shares each.

That on November twenty-seventh, A. D. 1915, the said defendant requested the said Sparks & Company to sell for him one hundred shares of the capital stock of the said Nevada Wonder Mining Company, which sale was made on the said twenty-seventh day of November.

That to make delivery the said defendant handed to the said Sparks & Company certificate No. 3788 for five hundred shares.

That at that time the transfer books of the said Mining Company were closed and did not open until about the second day of December, A. D. 1915.

That on the said twenty-seventh day of November, the said Sparks & Company made other sales of shares of said Mining Company, and to make deliveries, did deliver the said certificate No. 3788, in the ordinary course of business, to certain purchasers.

That for the purpose of making a return to the said defendant of the four hundred shares, remaining from his said certificate for five hundred shares, the said Sparks & Company, at the opening

of the transfer books of the said Mining Company on December 2, 1915, transferred to the name of the defendant four hundred shares of the said Mining Company, using other certificates, being No. A7763-64-65-66.

That subsequently the person, to whom the said certificate No. 3788 had been delivered, presented the same for transfer and was advised that an attachment had been issued in Churchill County, State of Nevada, by the above named plaintiff against the above named defendant, by virtue of which attachment all of the shares of the capital stock, standing in the name of the said defendant, had been seized, and that the shares represented by said certificate No. 3788 could not be transferred by the said Mining Company.

That the holder of said certificate No. 3788 returned it to the said Sparks & Company and demanded a negotiable certificate for five hundred shares, which was given the said holder by the said Sparks & Company, leaving the said certificate No. 3788 still in their possession.

That subsequently, while the said Sparks & Company were seeking to have the Nevada attachment dissolved, as to the four hundred shares, which had been transferred, as aforesaid, to the name of the said defendant, the above writ of foreign attachment was issued out of this court, and the said four hundred shares were attached.

The method of transferring shares of stock in a corporation of this state, both absolute and collateral transfers, is provided by *Rev. Code* 1915, §1930, which is:

"The shares of stock in every corporation shall be deemed personal property and transferable on the books of the corporation in such manner and under such regulations as the by-laws provide; * * *. Whenever any transfer of shares shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the transfer."

The rights of an attaching creditor are protected by *Rev. Code* 1915, § 2010, which provides:

"When stock shall be so attached, a certified copy of the process shall be left by the officer with the president, cashier, treasurer or any director of the company, who shall give such officer a certificate of the number of shares held or owned, by the debtor in such company, with the number, or

other marks, distinguishing the same, anything in the charter, or by-laws of said company, to the contrary notwithstanding."

It was suggested by counsel for plaintiff that the petition does not ask to have the attachment dissolved as to the five hundred shares, represented by certificate No. 3788, nor even as to the one hundred shares, which Sparks & Company sold on November 27; but it seeks to have the attachment dissolved as to the four hundred shares represented by certificates No. A 7763-64-65-66, transferred to the defendant prior to the attachment, and standing in his name on the books of the company, at the time of the attachment. The theory, upon which this request is made, is that the transfer of the said four hundred shares to the defendant was without consideration.

It was contended that this theory overlooks the fact that the transfer was made under seal; and that, under *Rev. Code* 1915, § 2010, the certificate of the director of the Mining Company delivered to the sheriff at the time of making the attachment is the true test as to the number of shares "held or owned" by the debtor. It was suggested that where one of two innocent persons must suffer, the burden is placed upon the less diligent. It was also urged that assuming the transfer of the said four hundred shares to have been without consideration, it is nevertheless true that the gratuitous transferers had no right to the possession of the stock at the time of the attachment, and that having clothed the debtor with all the indicia of ownership they are estopped as against an attaching creditor to claim the stock.

Speaking generally, it was conceded that as to what are the rights of an unregistered transferee of a certificate of stock as against an attachment levied on that stock, the courts in the different states are in irreconcilable conflict.

It was said, if it were not for this conflict and the case of *Allen v. Stewart et al.*, 7 *Del. Chancery* 287, 44 *Atl.* 786, it would be unnecessary to say more than this:

"The statute has prescribed the method by which either absolute or collateral transfers of stock in Delaware corporations shall be made. Until the statute has been complied with, the title of the transferee, if it has originated, is at least not complete. Until the title of the transferee is complete,

Statement.

the title of the attaching creditor must prevail, for the transferee has permitted the debtor to retain the indicia of ownership. To hold otherwise would be to open the door for frauds, which the statute was designed to prevent."

A careful summary of the statutes of the several states providing the method of transferring shares of stock, and citations of the decisions thereunder, followed.

It was said, it is argued with seeming justice that an attachment creditor ought to get no greater or better title than his debtor had; that as between the parties to the transfer the entire interest of the transferer, passes and that, therefore, there is nothing left upon which an attachment may be levied. This argument assumes that every transfer which is complete as between the immediate parties to it is complete as against the world; yet according to the better reason a transfer of stock is analogous to the delivery of a corporal chattel; that it must be made in such a way as to invest the transferee with "all the marks and indications of ownership," and that as a matter of fact the transferee gets no title as against creditors of the transferer until there has been such a delivery as the nature of the thing is capable of.

Only one reason can be urged against giving the rule requiring a transfer on the books of the corporation the meaning it evidently bears upon its face, and that reason is that it would be a restriction on the business of the world. It is not claimed that any one would suffer an injury by an adherence to the statute. It is simply placing the convenience of stock brokers over against sound and salutary requirements. To hold that the secret transfer of a piece of paper, known only to the immediate parties and as easily made after attachment as before, is valid as against a creditor, opens the door to unlimited fraud.

If it be contended that an innocent purchaser is deprived of his property without his fault, the answer is that he should have been diligent and had his transfer recorded.

The courts of all the states agree that if a stockholder whose stock has been already attached sells his certificate of stock, the vendee or transferee buys subject to the levy, even though he had no knowledge of it. Both the courts and the text writers admit that the only means of avoiding this danger is by inquiry

at the office of the corporation at the time of making the purchase, and yet those courts which support the title of the transferee often do so on the ground that outsiders have no right to demand an inspection of the books. In other words, in the former case the courts say, "You ought to have enquired," and in the latter case, the courts say, "We will protect you because you had no right to enquire." These inconsistencies can best be obviated and the rights of all parties best protected by insisting upon the statutory provision that shares of stock shall be transferable on the books of the corporation.

The case of *Allen v. Stewart et al.*, 7 *Del. Chancery* 287, 44 *Atl.* 786, was expressly decided on the ground that neither the charter nor the by-laws of the company contained any provision requiring the assignment of stock to be made upon its books.

There is a similarity between the New Jersey statute and the Delaware statute with respect to the transfer of stock. And it is true that the court in *Broadway Bank v. McElrath*, 13 *N. J. Eq.* 24, held that shares in a corporation can be effectually transferred as against an attaching creditor by a delivery of the certificate together with blank irrevocable power of attorney for the transfer thereof.

There is the greatest dissimilarity, however, between the Delaware statute and the New Jersey statute with regard to the attachment of stock.

The New Jersey statute (*Chapter* 74, *Laws of New Jersey* 1901), makes no provision whatever for the certificate prescribed in the Delaware statute, and consequently there is no implication that the stock ledger of the corporation shall determine the ownership of the stock attached.

The law cited by counsel for the petitioner would be applicable if the petition sought to have the attachment dissolved as to the 500 shares originally transferred by Rigdon to J. W. Sparks & Company, but these shares are not questioned by the petition. If they were, the plaintiff would produce evidence to show that the certificate contains on its face the words, "transferable only on the books of the company in person or by power of attorney on surrender of this certificate," thus bringing the

transaction within the rule laid down in *Central National Bank v. Williston*, 138 *Mass*. 244.

In other words, the transferee had notice of the exclusive method of transfer provided by the corporation.

With regard to the cases of *Commonwealth v. Watmough*, 6 *Whart*. (*Pa.*) 117, and *Finney's Appeal*, 59 *Pa.* 398, it must be remembered that the provisions of the Pennsylvania statute are unusual since they provide that if any person shall claim to be the owner of stock taken on attachment process, he may become a party upon the record and take defence in like manner as if he were made garnishee in the writ. In *Allen v. Stewart et al., supra*, the attention of the court seems not to have been called to the provisions of *Rev. Code* 1915, § 1020.

Counsel for the interveners contended that from the admitted facts alleged in the petition, Rigdon, the defendant never had any real or beneficial interest in the four hundred shares represented by certificates Nos. A 7763-64-65-66, but that when Sparks & Company, the petitioners delivered to their customers, shares in lieu of those represented by certificate No. 3788, leaving the latter shares undisturbed and in Rigdon's name, on the books of the company, he never having been deprived thereof, the real and beneficial ownership of said four one hundred-share certificates, remained in Sparks & Company and they should be released from attachment.

It was suggested that an equitable remedy would be more appropriate, but the function of the court on a question of interpleader is an equitable function, and that in this case no question is raised as to the propriety of the petition of interpleader.

*Allen v. Stewart et al.*, 7 *Del. Chancery* 287, 44 *Atl.* 786, was relied on as sustaining the rule that when stock certificates are in good faith assigned, the rights of the assignee are superior to those of an attaching creditor, though the transfer is not entered upon the books of the company, also *Reilly v. Absecon Land Co.*, 75 *N. J. Eq.* 71, 71 *Atl.* 248, *Commonwealth v. Watmough*, 6 *Whart.* (*Pa.*) 117, 137, and *Finney's Appeal*, 59 *Pa.* 398, 400. Special attention was directed to a line of cases collected in the note to the case of *Gray, Appt., v. Graham* 49 *L. R. A.* (*N. S.*) 1159.

It was observed that in those states which originally adopted a rule contrary to that laid down in *Allen v. Stewart, supra,* the Legislature changed that rule to make it consistent with the rule as laid down in our own state and the neighboring states of New York, New Jersey, Pennsylvania and Maryland. And that an analysis of the decisions on this important matter appears in a note to the case of *Mapleton Bank v. Standrod,* 67 *L. R. A.* 656, and in shorter notes to cases appearing in 20 *L. R. A.* (*N. S.*) 996. In addition to the reference to these notes attention was especially directed to the similarity between the New Jersey statute and the Delaware statute, with respect to the transfer of stock.

The New Jersey statute (2 Comp. St. 1910. p. 1610) was quoted as follows:

"The shares of stock in every corporation shall be personal property, and shall be transferable on the books of the corporation in such manner and under such regulations as the by-laws provide; and whenever any transfer of shares shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the transfer."

PENNEWILL, C. J., delivering the opinion of the court:

After a very careful consideration of this case, we have reached the conclusion that this court could not, upon the facts presented, make a satisfactory decision respecting the ownership of the shares of stock in question; and even if they could it would be impossible to make such an order as would safeguard the rights of all parties concerned.

(1) Being of the opinion that the questions raised by the petition can be properly determined only in equity where all the facts can be ascertained, all the parties brought in and their rights adequately protected, we are of the opinion that the petition should be dismissed without any decision respecting the ownership of the stock, so that the entire subject matter may be submitted to the Court of Chancery, unembarrassed by an adjudication here based upon an incomplete statement of the facts and a partial consideration of the case.

(2) We are not unmindful of the contention of the plaintiff that Sparks & Company having caused to be transferred on the

books of the company the four hundred shares they are thereby estopped from denying his ownership as against the attaching creditor.

This contention is independent of the question of ownership and is based upon the principle of estoppel; but it would also be a proper question for the determination of a Court of Equity inasmuch as it is contended by the petitioners that there was no consideration for the transfer.

The rule is discharged and the petition is dismissed.